Ladies and gentlemen, please rise. This court is now in session. You may be seated, and the clerk will call the next case. 321-0550 Westman Christian Church and Illinois Not-for-Promise Corporation Appealed by Gregory Deck v. Eric Blair Douglas Anderson K&K County Board of Review in St. George Community School District No. 258 Athlete's bench, Pat Ginsburg Mr. Deck, you may proceed. Good morning, and may it please the court. As you're aware from reviewing the briefs in this case, this case involves the removal by local assessment officials of the real estate or property tax exemption from the Adventure Church property. Both the facts and the law show that this removal was improper. Adventure Church purchased this property in July of 2017 and began almost immediately to begin using it for religious purposes, including conducting regular worship services. It also promptly applied for a real estate tax exemption for the property pursuant to section 15-40 of the property tax code which provides religious property exemptions. The Illinois Department of Revenue granted that exemption in November of 2017. Sometime during 2020, the Kankakee County Chief Assessment Officer, or the Bourbonnet Township Assessor, removed the exemption from the Adventure Church property. We do not know which official actually removed that exemption, we do not know precisely when that exemption was removed, and we do not know what the reason was for that attempted removal. Disturbingly, no notice was given to Adventure Church of the removal, and Adventure Church was given no opportunity for a hearing. Adventure Church, rather, learned of the removal of the exemption by receipt of a notice of property assessment assigning assessed valuation to their property for the first time when it was previously exempt. This notice, which is in our appendix to our brief, was a typical notice that's given to hundreds of other property owners throughout Kankakee County informing them of increases in their assessed valuation. The notice indicated that Adventure Church could file an assessment complaint with the Kankakee County Board of Review, and Adventure Church did precisely that. It filed the assessment complaint asking the Board of Review to recognize the exemption previously granted by the Illinois Department of Revenue and reduce the assessed valuation down to zero. The Board of Review denied that assessment complaint. After that, Adventure Church sought the only relief that was then available to it, which was to bring a complaint in the circuit court. That complaint has two counts to it. Count one is asking for a mandate or some sort of court order that the local assessment officials recognize the exemption that was granted by the Illinois Department of Revenue to the Adventure Church property, and count two asks for judicial review of that decision of the Board of Review denying the request to restore that exemption. The school district and the local assessment officials filed a section 2619 motion to dismiss the Adventure Church complaint. The trial court granted that motion to dismiss. This appeal is from the trial court's memorandum of decision granting the motion to dismiss and dismissing with prejudice the complaint of Adventure Church. With regard to the standard of review, the parties are in agreement that the proper standard of review for the appellate court is de novo. Section 2619 motions present questions of law which result in that de novo standard being the appropriate one for your review. The facts should not be an issue in this case. On a section 2619 motion, well-pleaded facts in the complaint as well as reasonable inferences from those pleaded facts are assumed to be correct in the absence of any affidavits to the contrary. In this case, the section 2619 motion was not accompanied by any affidavits whatsoever. The Illinois Department of Revenue has exclusive authority to grant property tax exemptions in the first place. Section 16-70 of the property tax code provides that a Board of Review may make recommendations to the Illinois Department of Revenue but it's the Illinois Department of Revenue that makes that decision and determines whether property is actually exempt. The Illinois Department of Revenue then notifies the Board of Review and local assessment officials and they're required by law to implement that decision. In that process of the Illinois Department of Revenue determining the exemption, there's opportunity for notice in hearing to interested parties. Just as is the case for granting exemptions in the first place, the provisions of the property tax code also give to the Illinois Department of Revenue the determination whether property is no longer exempt from exemptions. In other words, whether to remove an exemption. That's section 15-25. It again importantly provides for notices to interested parties and an opportunity for a hearing. There are only three very limited exceptions to the general rule that the Illinois Department of Revenue is the only one allowed to remove those exemptions. Those very limited circumstances are as follows. Number one, section 15-10 says local officials may remove that exemption if the owner of exempt property does not file an annual renewal affidavit. Second narrow exception, 15-15 of the property tax code provides that if the property is leased, loaned, or otherwise made available for profit and the owner doesn't file copies of leases or agreements so they can give it a new tax parcel number, again the local assessment officials may remove the exemption. And the third narrow exception is section 15-20 where if the owner of the exempt property, self-reporting type device, comes to the chief assessment official and says there's written change in the ownership or use of these properties. Those three very narrow exceptions are all very much ministerial or administrative in nature. They're not at all discretionary. None of those statutory provisions I just recited say something like local officials in their discretion may. Local officials if they believe that. All of these exceptions apply only if there's been some little goof up in the sense that somebody didn't file a renewal application, somebody didn't report something, whatever it may be. So that's the only little opportunity that local officials have to kind of sidestep the Department of Revenue on the exemption case. None of those three limited exceptions apply in this case. First, there is no annual renewal affidavit required for religious program tax exemptions. So when you read down to the statute that says you've got to file a renewal application it says it doesn't apply to churches and other religious organizations. Secondly, there's no evidence that Adventure Church has leased, loaned, or otherwise made its property available for a profit. Again, we're on a section 216-9 motion. What it says is it's been used continuously for religious purposes and there's no change in use. And there's no notification of change of use was given by Adventure Church and that's because there was no evidence of any change in such use. So the court is to apply in section 2619 all well pleaded facts and inferences which show no change of use, therefore nothing triggering any of these exceptions to the Department of Revenue's power to remove the exemption from the property. Mr. Deck, I have a question. I'm confused because I thought that you were asking for a revaluation. No, not at all. I don't know where that came from. There was no revaluation whatsoever on this property. It was found to be exempt. The church was granted an exemption by the Department of Revenue and the local officials removed that exemption. There's nothing about any revaluations. So you didn't ask to have it reduced to zero? Oh, we asked it to be reduced to zero, yes. But that's because we're just asking to restore that exemption to the Board of Review. The property tax code has a provision that says that the Board of Review has the power to make necessary corrections in assessment valuations and exemptions. In other words, it has the power to say hey, this exemption was not removed properly, therefore it needs to get back on. That's what we asked before the Kansas City County Board of Review. So you don't think there's a difference between asking that the property be valued at zero for tax purposes and placing or removing an exemption? You think those are the same things? If you read the assessment complaint, it says hey, this was given an exemption. It wasn't supposed to be removed. Restore it back to zero. We're asking them to make a correction and that is, like I said, the property tax code is in the Board of Review power section there. I can't remember the number of this right now, but it does say hey, they can't give exemptions to the Board of Review, but where they see a property that was supposed to be exempt, they can put it on and that's exactly what should have happened here because it was taken away improperly by the local assessment officials. It needs to get back on. So that's the reason for that. So is your request timely? Yes, it was. We filed a timely request and it's important to note that it's the local assessment officials that drove the way we had to react to this because they issued a notice of property tax assessment. In other words, they tried to put on assessed valuations for the very first time to this property. That drove the way we needed to respond because they chose purposefully, apparently, to ignore the provisions of section 1525 and say to the Department of Revenue, take a look at this situation, see what's going on here, and if you think the exemption's improper, remove it. Had they done that, we would have had notice, we would have had an opportunity for hearing, and frankly we wouldn't be here today dealing with this matter because it's the way the local officials approached that. So our only option here was to say that needs to be back to zero because it's exempt. That's the reason. We weren't arguing, we didn't submit valuation authority saying the property was worthless. We said the exemption needs to be applied back to this property because it was improperly removed. And instead, what happened was they removed it without any notice, without an opportunity for hearing. And they really had no jurisdiction to do it as well. Section 9-70 prohibits local assessment officials from assessing exempt property. It's very explicit. They have no jurisdiction to do so. And our Illinois Supreme Court has confirmed that in the Millennium Park case in the city of Chicago that's cited in our brief. And in fact, in Millennium Park, the fact pattern was very similar in this sense. The local assessment officials in Chicago decided that a restaurant in Millennium Park should not be exempt from taxation. It was granted exemption by the Illinois Department of Revenue. So the local assessment official did exactly what Kankakee County tried to do here and put assessed valuation on without removing it, without going to the Department of Revenue and having the Department of Revenue, if appropriate, use the removal powers that it has because it is the body that has the discretion to remove. The local officials only have authority to remove in very ministerial or administrative manners. And so that's why...you're saying that you don't have to follow the administrative ordinance of either going to PTAP or paying under protest because you were asking for the correction in the... By the Board of Review. We asked for correction by the Board of Review in that sort of situation. Yeah, exactly. And that same thing happened, like I said, in the Millennium Park case. The Illinois Supreme Court said that's what we were presented with here. We didn't choose the way that exemption was removed. The local officials did. And because of their choice, we had to kind of follow their path. It's not the desired path because the desired path would be Department of Revenue, notice, and hearing, and do it the right way. It's them that chose that way. And I'm not sure the reason why, but they did. And so we are stuck with the results of that. Sure. And I mean 15-15 gives them the authority to do exactly that. They have the authority to do it. But you see sort of the problem here is both entities, local and Department of Revenue, have the authority to remove...both have them. And it's problematic, actually. Actually, here we are. But both have the authority to do it, clearly. There are circumstances, but... Yeah. Now in 15-15, though, it has to be leased, loaned, or otherwise used available for profit, and the owner's got to file copies of leases and things like that. That's the issue here because we don't know, first of all, if that was the reason why they did it. And number one, there are no facts. We're in a 2-6-19 motion. There are zero facts. A scouring of the record shows no facts whatsoever of any change in use, any lease or loan or otherwise made available for profit. That's absent from the record here. And so neither the trial court nor the local assessment officials have any authority to do it in that sort of case. They can't just guess at what they think might be happening. They need to find out. Perhaps they could report it to the Department of Revenue, have the Department of Revenue implement the procedure so we can deal with it with notice and hearing and opportunity for all of that. And it doesn't solve the problem either, as the local officials are attempting to say by saying, well, just file a new exemption application. The point is, they removed it improperly in the first place, and there should be no need to because there was never a need. You don't know whether they improperly removed it or not. We've gotten that far because it's a 2-6-19 motion. Correct. But it really, if you think about it, if the local officials have authority to remove these whenever they want, so to speak, it really renders meaningless the power and authority of the Illinois Department of Revenue. If they grant an exemption, for example, a particular property, it comes back to a local board of review and they say, we don't like that result, and they just can take it away, for example. They can't just take it away. It's like you said, it's very near a circumstance, but their author has to do it under that circumstance. Again, those are ministerial things. I think they attempted to apply some discretion. That's the only reason I can think of. Again, we don't have the facts because we're on a 2-6-19 motion is what it amounts to. So we have to use the well-pleaded facts with no change in use, no change in use, no lease or loan for profit, all that kind of stuff. Those are the facts that we have before us. None of that existed. And there was, by the way, no failure to exhaust administrative remedies in this case. While the general rule is a party that is aggrieved by administrative decisions cannot normally see us without having to pursue their administrative remedies first, it's very clear here that in the property tax code, the administrative review law was not applied, it only applies to the Department of Revenue and the Property Tax Appeal Board. It does not apply to decisions of local boards of review. In fact, this very court, this third district court, found that in the Marisont case cited in our brief. And I see my time is up. Thank you. And Mr. Ginsburg, you may proceed. Thank you, Your Honors. And may it please the Court, yes, as you can see, this case presents a simple yet unusual fact pattern. A local assessment officer has terminated the exemption of a church. It raises a lot of curious questions that, unfortunately, we're not going to get to answer today, is why on earth would that happen? But the fact is it happened, and we think it raises three, maybe four issues. The first issue being whether the Kankakee County assessment officials are authorized to terminate an exemption. And within that, I kind of call it issue 1A, does the record here sufficiently show that that power was exercised under these circumstances? And then the next issue being if the chief county assessment officer does exercise that discretionary authority to terminate the exemption, what's the impact to the taxpayer? And then finally, we should know how is that taxpayer harmed, and if that exemption is terminated, how can they get it back? Do they get the right to a hearing and the right to notice that counsel has alluded they missed out on? We believe the answer to all those questions are they provide a nice opportunity to review the property tax code in this area, but they are pretty clear and straightforward, and it doesn't leave much room for ambiguity when we explore that code. So under the first issue, are there circumstances under which the chief county assessment officer can terminate an exemption, as Justice Peterson alluded to? There certainly are. There's at least two, 1510 for failing to file an affidavit of continuing exempt use. That's not applicable here because religious use exemptions don't apply there. However, under 15-15, failure to provide a lease or a description of portions of property that are being used for non-exempt purposes, non-religious purposes, must be filed. And so under those circumstances, when they are not filed, the Illinois legislature has given quite a powerful discretionary authority to this chief county assessment officer. It says, failure to file such leases, agreements, or descriptions shall, in the discretion of the chief county assessment officer, constitute cause to terminate the exemption, not withstanding any other provision of this code. So right now, that pretty much answers all the issues that counsel has raised regarding their ability to terminate the exemption. Yes, they can. Is it ministerial? No, they have the discretion to do that. And what happens if they do? It's terminated. And think about that word, terminated. It's a powerful word. I looked it up in the dictionary. Terminate put an end to. The discretion to put an end to this assessment. It ceases to exist. So under those circumstances, there is a, the property is no longer exempt, at least for the time being, until we have a look to go at what's going on here. And as your honor alluded to, it is an issue of dual authority in this situation, because as the court in the Highland Park Women's Club v. Department of Revenue  462, the determinative factor in our view is that both the Department of Revenue and the Board of Review have the authority to review exemptions under the Act. So the appellate court has stated that there is this dual authority that exists here. Now the trickier question is is the record sufficient to demonstrate that this was a 15-15 termination as we think it was? And in my opinion, yes it was. They received a notice of had a code, these assessment notices. They don't like to veer from their codes and so it said, new construction, reassessment, class code change, township revalue. It's basically throwing everything in there and saying something is going on, some change is taking place with this property that is sufficient for the assessment officials in Kankakee County to terminate the exemption for now. And so what, you've got to understand what that notice is doing is it's not telling them that they have to pay their taxes tomorrow. The notice was issued September of 2020. Taxes aren't going to be due for nine months later at least until June of 2020. Usually a second installment comes in September or October 2021. October 2021 judicial foreclosure won't happen until December of that year. So we're talking about nine to 15 months to work this out before any real harm comes to this taxpayer. To be sure, the property tax code says over and over again in these circumstances, if the tax is paid and it turns out the property was exempt, there will be a refund of all taxes paid and that refund will come with interest. There's very little harm to the taxpayer. They are deprived of that tax money while this is getting worked out. They might have to hire a lawyer, but they are not being forced to pay an unlawful tax without any recourse at all. It's just that the property tax code requires taxpayers to pay their taxes while these issues are being resolved. As far as the sufficiency of the notice itself, it's worth noting that I'm reviewing for this appeal three cases that the parties have cited. The DuPage-Artley case, 157 Illap 3rd, 335 at 357. United Methodist Village Retirement Communities, 321 Illap 3rd, 456 at 458. And then the Millennium Park case we referenced earlier. All three of those cases in the introductory paragraphs informed the reader that they were providing the exact same kind of notice to these taxpayers that had their exemptions terminated. In the Artley case, it says on November 15, 1982, notice of assessment was given, which caused them to file an exemption application. United Methodist, on August 7, 1998, the Madison County Supervisor of Assessments issued a notice to a taxpayer assessment. In Millennium Venture case, it said in March 2005, the assessor sent plaintiff a notice of assessment. It appears this is how it's done statewide. This is how you notify taxpayers that exemptions are being terminated. So that's exactly what happened here. The Kankakee County Chief County Assessment Official, or the assessment officials that made this determination, sent the notice that all other county assessment officials send these taxpayers when some change in use has required a termination of exemption. But is that the only, you know, when those notices go out, is that the only thing that they notice, and it can't simply be an increase in value regardless of whether there's an exemption of any kind on a piece of property? I mean, you... Well, it's, in those three instances I saw, it was a notice that the property had previously, as here, the property had previously been assessed at zero, and now it's assessed at a number. It wasn't any specific your exemption is being terminated, or you're hereby notified. It was just the assessment notice. That's as far as I... Does that answer your question? When you're saying that this was issued in September, this was not what is typically issued for all properties where there's a change in use, it was just in a specific notice that was sent to this individual taxpayer, change in their assessment... Yes, Your Honor, I understand the question. This was not a quadrennial reassessment year, and so under those circumstances, you only receive notice in the mail if you have a change in circumstances that would compel that notice. Otherwise, if your assessments remain generally the same from year to year, then you're not going to receive any notice like that. So here, this was a notice that some event had incurred outside of the quadrennial that is changing the assessment. And, you know, on the same point about the notice, yes, the court should take all well-plated facts and reasonable inferences as true, but in my opinion, there were not enough well-plated facts to demonstrate that this chief county assessment official was doing anything other than exercising its statutory duty. Stated differently, I don't believe a court has to take unreasonable inferences to make assumptions that a county's chief assessment official must make... I think unless there's some other fact in the record, you can assume that a chief county assessment official is acting within its statutory duties, especially whereas here, there's the notice, there's the code change, there is, you know, something else is that, you know, we're talking about there was a board of review here. We had a hearing on this. It was a valuation hearing. It should have been at a different price, but I mean, this taxpayer was given, the chief county assessment official presumably was at that hearing, and there was a discussion, and they know why this happened. So yes, you know, could the record be a little bit clearer on this point? Yes, there was a motion to strike, which caused some things to get noticed, to get stricken, and therefore, the judge said, I don't need that information because we have enough here to make the determination. So that's how the record is. A little bit missing, that one specific fact, but I do think there's enough in the record remaining to make the assumption that the chief county assessment officer wasn't acting arbitrarily or outside of its discretion. So again, the impact of the, the next issue is what's the impact of the termination? The impact of the termination is that this property is no longer exempt, and so does that mean they have to pay their taxes? No, not if they can figure this out over the next 9 or 12 or 15 months, as we discussed. And if they come due again, they will be entitled to a refund, and that's under section 16-70 of the property tax code, which again states that any taxes extended upon the authorized assessment shall be abated or, if paid, shall be refunded. So what should this taxpayer have done? This taxpayer should have filed an exemption application with the county board of review instead of filing an evaluation complaint with the board of review. And we're not being cute here and saying well, we know what we're doing here anyway, and can't we just pretend they're the same? No, the Department of Revenue has a statutorily, administratively prescribed form that provides the assessment officers the information that they require to make determinations as to whether a property is exempt or not. That includes ownership documentation, lease documentation, use documentation, pictures of the property, affidavits of the current owner or user, enough information that a board of review can have an opinion on, as opposed to coming into a hearing about whether the value should be zero or $600,000 and determine there. And it goes even further than that. Even if the board of review had enough information in that hearing room, there's nothing to send to the Department of Revenue who can ultimately make the final decision, because the Department of Revenue requires boards of review to prepare the file with that application and a statement of facts and a recommendation. Without that, the Department of Revenue has nothing upon which they can make a determination as to whether the property should be continuing to be exempt or should be exempt for the first time. In the Millennium Joint Venture case, it hit it on the head. I can't believe it had this statement that says, and this is a quote, it has also been held that the only limitation in such cases is that when a taxpayer elects to pursue a remedy before the board of review. So when the taxpayer elects for the remedy for the board of review and then goes to the circuit court, it says he will not be allowed to abandon the board of review proceeding and then go into equity. If they wanted to make a case about terminating the exemption, I think it would have been wrong, but what they should have done was gone directly to the circuit court and sought an injunction against the placing the property back on the tax rolls. What you can't do, according to the Supreme Court in the Millennium Ventures case at page 301, is you can't go valuation and then not like that decision, okay, we can't go to, you know, you have to kick a lane and stick with it. You can't go down the valuation lane and then not like the result there and so then try the circuit court lane. You have to, you could have gone to the circuit court eventually. I think it would have still gotten knocked out, but certainly you can't do what happened here. So what the taxpayer should have done, they should have filed an application with the board of review. The board of review would have held a hearing. The hearing would have come up with a recommendation. This property should be exempt or it should not be exempt. That recommendation would not have been a final decision. That recommendation would have gone to the Department of Revenue. The Department of Revenue would have then made an initial determination. That initial determination would be subject to either party objecting and asking for a hearing. Then there'd be a hearing and then there'd be a final determination. Then we'd go under administrative review. Those are options that were at all times available to this taxpayer and I do believe they could have been resolved by the time the taxes were due had they gone that way. They didn't go that way. The procedure here just is not one that, it just comes up with dead ends every way you go. You can't go valuation because there's no reviewing body and you can't go circuit court because you haven't exhausted your administrative remedies. It's why these laws are in place to avoid this kind of administrativeness. There's no way that the Millennium Park case does involve one of the few exceptions to exhaustion of administrative remedies in the exemption contest because that is a situation where property taxes, the court is unauthorized by law. Here there's no allegation that this law, this exemption termination or the assessment in general was unauthorized. In the Millennium Park case that was a situation where they tried to tax a license which wasn't even specifically identified. It was like concession stands where they move all over the place. That's not a property tax. That's a right to be on the property and do things with certain limitations. In a very, very narrow decision, I think five to four of the Supreme Court found that's not unauthorized by law. I don't think that precedent has been followed by any courts in anything like these contexts. Are you saying that the bottom line is in the evaluation now, the route they chose, that hearing is to determine what property is valued not to deal with exemptions by its nature? That's correct. It's different evidence, different forms, different arguments. The only way to get to the exemption issue and then ultimately to the deal with R was the re-application. The re-application, and that's under the Department of Revenue's Administrative Rules for Practice and Procedure, which requires as a prerequisite to going forward with an exemption application, the filing of the statutorily prescribed form or the administratively prescribed form. Thank you, Your Honor. Thank you, Mr. Ginsburg. Thank you. Mr. Deck for rebuttal. Just addressing that last point, I just wanted to point out that Section 16-95 of the Property Tax Code says that a taxpayer may bring to the attention of the Board of Review any property that is over-assessed, under-assessed, or exempt. That's exactly what was done here. The pathway was chosen by the local assessment officials. Had they, when we talk about could have, should have, they should have gone to the Department of Revenue per Section 15-25, we wouldn't have the mess that we have now. The mess is fixable by review by the court. The court does have authority to do that. It does have subject matter jurisdiction. It's shown both in this very court's Marisont case and the Millennium Park case. It has the ability to step in and review and fix this situation. What happened is not the new, it shouldn't be the norm. It isn't the norm. The Millennium Park case happens to be somebody who tried the same thing, but they were told no there. I think to paint that as if that's the preferred procedure is not at all correct, because they were told by the onus of the court, that's not the right way. You can't, to try to contest for a local official to contest an exemption, you don't just slap on assessed valuation. In fact, the notice that they were given, it's appendix A-1, page A-1, says, here's what notice the church got. New construction, don't ask me where they got that. Reassessment, don't ask me where they got that. Class code change, that has nothing to do with this sort of thing, that's a type of property. Township revalue,  didn't do whatever, did whatever it may be. This is the only notice they got. And so we were forced to go down the path, the church was forced to go down the path of going back to the Board of Review because the statute says the Board of Review can fix this, it's just they chose not to do it, probably because they misunderstood that they had the authority to do it, but they clearly do, by section 1695, 16-95 of the property tax code. And the powers and duties of the Board of Review, they definitely have the authority to fix that sort of thing. A new application should not be required because it was improperly removed in the first place. Again, 9-70 of the property tax code, it's discussed in those cases as well, in the Millennium Park, says explicitly that local officials like this, assessment officials, cannot assess exempt property if it's properly exempt. So therefore, we believe that the circuit court does have jurisdiction to hear the complaint. The decision of the trial judge to grant the motion 2619 is simply incorrect because that decision apparently goes with the conclusion that there was some sort of change in use in the property. There is no evidence whatsoever of that. It's a 2619 motion. And so the decision of the trial judge should be reversed and be sent back to the circuit court for action consistent with that reversal. Thank you.